**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JAMES E. DURHAM, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:20-cv-02398-TWP-DLP |
| ) | |
| DUSHAN ZATECKY, ) | |
| ) | |
| Respondent. ) | |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

This matter is before the Court on *pro se* Petitioner James Durham's ("Mr. Durham") Petition for Writ of Habeas Corpus, (Dkt. 1), challenging his convictions for two counts of murder and three counts of attempted murder under Cause No. 82C01-0305-MR-529, in Vanderburgh County (Indiana) Circuit Court. His claims are non-cognizable, procedurally defaulted, or otherwise without merit. Accordingly, his Petition For A Writ Of Habeas Corpus is **denied**. A certificate of appealability shall not issue.

**I.   BACKGROUND**

**A.   Underlying Criminal Conduct and Trial Court Proceedings**

The Indiana Court of Appeals provided the following description of Mr. Durham's underlying criminal conduct and trial court proceedings:

> On May 9, 2003, Durham shot Joseph Scales in the neck with a handgun. On May 10, 2003, Durham entered a bar in Vanderburgh County. After exclaiming religious ideations, Durham shot four people, killing two of them. Police arrested Durham shortly thereafter, and a gun found on his person was identified as the gun used in the shootings.
>
> The State charged Durham with two counts of murder and two counts of attempted murder, Class A felonies, regarding the shootings at the bar. The State then added a charge for an Habitual Offender enhancement. Following a hearing, on May 27, 200[3], the trial court ordered evaluations to determine Durham's competency and sanity. Two psychiatrists, Dr. Hilton and Dr. Liffick, evaluated Durham, and, after

a hearing, the trial court found him to be incompetent to assist with his defense and ordered him committed to the Department of Mental Health. The court noted that Durham was disruptive at that hearing, "as in all previous court appearances."

Durham began treatment at the Logansport State Hospital ("Hospital") in December 2003. On March 31, 2004, the Hospital filed its report, which included its determination that Durham was competent, and the trial court adopted that determination. At a hearing on April 13, 2004, the trial court ordered an evaluation to determine Durham's sanity at the time of the alleged offenses. On August 4, 2004, Dr. Liffick filed his psychiatric report regarding Durham's sanity. Dr. Hilton then informed the court that Durham refused to be transported for evaluation. On August 17, 2004, after a hearing, the trial court granted a defense motion to have Durham re-evaluated as to competency.

On August 24, 2004, Durham appeared at a hearing and stated that he did not wish to assert an insanity defense, but he agreed to be evaluated. On August 25, 2004, the trial court ordered new evaluations regarding Durham's competency and his sanity. On September 10, 2004, Dr. Hilton filed a report of his psychiatric evaluation of Durham, and at a hearing on September 30, 2004, at which Durham appeared in person, the trial court again found Durham competent to assist with his defense.

Trial was scheduled to begin on January 10, 2005. At a progress hearing on December 10, 2004, defense counsel requested a weekend continuance to allow Durham to "talk with his family about how to proceed." The trial court denied that request. On January 7, 2005, three days before the trial was scheduled to start, the sheriff's department informed the court that Durham had stopped taking his medications "that were prescribed by the psychiatrist at the mental hospital after the court found him to be incompetent to assist in his defense." The court noted that Durham had "returned from the mental hospital and had been adjudged competent as a result of his taking the medication. Durham had been calm, lucid and responsive in the court room and much different than what he was before he was sent to the mental hospital." Defense counsel first learned at 10:30 a.m. that day that Durham had ceased taking his medications, and the jail reported that Durham was "beginning to show symptoms of his mental illness."

Thereafter, the trial court brought Durham into the courtroom, questioned him, and determined him to be competent. Durham informed the court that the medications had been making him sick. The trial court ordered Durham to take his medications and stated that it would send a psychiatrist to "help give him some medication that won't make him sick." Durham then agreed to start taking his medications again. In response to questioning by defense counsel, Durham stated that he did not think he was competent at that time but would start taking his medications. The trial court denied defense counsel's request to have Durham's competency re-evaluated.

> On January 8, 2005, the State filed in open court an additional attempted murder charge, regarding the shooting of Scales. Thereafter, the parties filed a plea agreement, under which Durham pleaded guilty to two counts of murder and three counts of attempted murder, Class A felonies. After questioning Durham, the trial court found that a factual basis for the plea existed and that Durham had entered the plea knowingly, voluntarily, and intelligently.
>
> On January 28, 2005, Durham filed a motion to withdraw his guilty plea. After hearing arguments from both parties, the court denied the motion. On March 1, 2005, the trial court sentenced Durham to sixty years for each murder count and forty-five years for each attempted murder count. The sentences for the murders and for the first two attempted murder counts were to run consecutive to one another, and the sentence for the third attempted murder count was to run concurrent to the other sentences. Durham's total executed sentence was 210 years. This appeal ensued.

(Dkt. 7-15 at 2-5 (cleaned up) (internal citations omitted).)

**B.**     **Direct Appeal**

Mr. Durham raised two issues on direct appeal. First, he argued that the trial court erred when it denied his motion to withdraw his guilty plea. (Dkt. 7-5 at 3.) He argued that by operation of an Indiana statute, Ind. Code § 35-35-1-4(b), the trial court was required to accept his motion to withdraw to avoid a "manifest injustice" because he did not understand the nature of the insanity defense when he pled guilty. *Id.* at 5-9. He also argued that he was not competent when he pled guilty. *Id.* at 9-13. The Indiana Court of Appeals affirmed on this issue. *Id.* at 9, 13.

Second, he appealed his 210-year sentence. He argued that the trial court failed to find and appropriately weigh aggravators and mitigators and that his sentence was inappropriate under Indiana Appellate Rule 7(B). *Id.* at 13-20. The Indiana Court of Appeals reversed on this issue and reduced his sentence to 170 years. *Id.* at 19-20.

Mr. Durham raised the same issues in a petition to transfer to the Indiana Supreme Court. (*See* Dkt. 7-17.) His petition to transfer was denied. (Dkt. 7-18.)

**C.**     **Post-Conviction Proceedings**

Mr. Durham filed a petition for post-conviction relief in Vanderburgh County Superior Court.  (*See* Manual Filing, Appellant's Post-Conviction Appendix Volume II, pp. 48-75 (petition) and 86-95 (amended petition).)  His post-conviction relief petition was denied.  (Dkt. 7-11.)

On post-conviction appeal, Mr. Durham argued that the post-conviction court erred when it did not hold an evidentiary hearing, that he received ineffective assistance of appellate counsel, and that he received ineffective assistance of trial counsel.  (Dkt. 7-12 at 6.)

The Indiana Court of Appeals affirmed on all grounds.  (Dkt. 7-15.)  The court held that the post-conviction court did not abuse its discretion under Indiana Post-Conviction Rule 1(9)(b) when it denied Mr. Durham's request for an evidentiary hearing.  *Id.* at 7-8.  The court also held that Mr. Durham waived his ineffective assistance of appellate counsel claim by failing to present the specific grounds for this claim in his post-conviction relief petition.  *Id.* at 8.  Finally, the Indiana Court of Appeals denied Mr. Durham's ineffective assistance of trial counsel claim on the merits.  *Id.* at 10-16.

## II.  LEGAL STANDARD

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted).  "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302.

> Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct.

5

The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III.  DISCUSSION

Mr. Durham's habeas petition raises many of the same grounds that he raised in his direct appeal and post-conviction appeal. (*See generally* Dkt. 1.) The only issue he has abandoned is his claim that the post-conviction court erred by failing to hold an evidentiary hearing. *Id.* For the reasons explained below, Mr. Durham's claims are denied as non-cognizable matters of state law, denied as procedurally defaulted because they were decided on an independent and adequate state law ground, or denied on the merits.

**A.  Non-Cognizable State Claims**

> Errors in state law in and of themselves are not cognizable on habeas review. The remedial power of a federal habeas court is limited to violations of the petitioner's federal rights, so only if a state court's errors have deprived the petitioner of a right under federal law can the federal court intervene.

*Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004).

Mr. Durham argues the trial court abused its discretion under Ind. Code. § 35-36-3-1(a) when it denied his motion to withdraw his guilty plea. He also argues that the trial court failed to properly find and weigh aggravators and mitigators and that the Indiana Court of Appeals should have imposed a greater reduction of his sentence under Indiana Appellate Rule 7(B). These are

6

matters of state law that are not cognizable on habeas review. Accordingly, his request for relief on these issues is **denied**.

B.     **Procedural Default**

Procedural default "occurs when a claim could have been but was not presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). A claim may also be procedurally defaulted if it was denied by a state court on a procedural rule "that is both independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017). For a state-law ground to be "adequate," it must be "firmly established and regularly followed." *Id.* (quoting *Walker v. Martin*, 562 U.S. 307, 316 (2011)). But a "rule can be 'firmly established' and 'regularly followed,' . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* at 316. The rule may not have been applied in a manner that "impose[s] novel and unforeseeable requirements without fair or substantial support in prior state law" or "discriminate[s] against claims of federal rights." *Walker*, 562 U.S. at 320-21.

Mr. Durham argues that he received ineffective assistance of appellate counsel. Specifically, he argues that his appellate counsel failed to argue that the imposition of consecutive sentences was inappropriate. (Dkt. 1 at 45.)

The Indiana Court of Appeals denied this claim in Mr. Durham's post-conviction appeal, reasoning that he waived the issue for review by failing to present his specific grounds for relief in his petition for post-conviction relief. (*See* Dkt. 7-15 at 8.) Indiana's rules governing post-conviction proceedings require that all claims for relief be pleaded in the post-conviction court; otherwise, they are deemed waived. *See* Indiana Post-Conviction Rule 1(8); *Allen v. State*, 749

7

N.E.2d 1158, 1171 (Ind. 2001). Thus, the denial of his ineffective assistance of appellate counsel claim was based on an independent and adequate state law ground, and the claim is procedurally defaulted for habeas review.

A habeas petitioner "can overcome procedural default by showing cause for the default and resulting prejudice, or by showing he is actually innocent of the offense." *Brown v. Brown*, 847 F.3d 502, 509 (7th Cir. 2017). Mr. Durham has not shown cause to excuse his procedural default. Accordingly, his request for relief on this ground is **denied**.

### C.     Remaining Issues

Mr. Durham raises two remaining issues: (1) that he was not competent when he pled guilty; and (2) that he received ineffective assistance of trial counsel.

#### 1.     Competence

A criminal defendant must be competent to plead guilty. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). To be competent, the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Id.*

To be sure, Mr. Durham has a long and well-documented history of schizophrenia, and his courtroom behavior in the months after his arrest was clear evidence of psychosis. (*See* Manual Filing, Supplemental Transcript Volume II, pp. 58-60; Volume III, p. 68.) It was for these very reasons that the trial court recruited two independent psychiatrists to conduct competency evaluations. (*See* Manual Filing, Appellant's Direct Appeal Appendix Volume I, pp. 113-17 (Dr. Liffick Competency Report I), pp. 118-28 (Dr. Hilton Competency Report I).)

When Dr. Liffick and Dr. Hilton determined that Mr. Durham was not competent, he was transported to a forensic psychiatric hospital. *Id.* at 129-30. After three months, the onsite

psychiatrist determined that Mr. Durham was not competent, but that his condition had improved, and that restoration of competency was possible. *Id.* at 151-57 (Dr. Sena Competency Report I). After additional treatment, the onsite psychiatrist determined that Mr. Durham's competency was restored, and he was transported back to the county jail. *Id.* at 158 (transport order), 159-64 (Dr. Sena Competency Report II).

Several months after he returned to the county jail, Mr. Durham was again evaluated for competency by Dr. Liffick and Dr. Hilton. Both psychiatrists determined that Mr. Durham was competent to stand trial. (*See* Manual Filing, Appellant's Direct Appeal Appendix Volume II, at 215-18 (Dr. Liffick Competency Report II), at 219-30 (Dr. Hilton Competency Report II).)

Three days before trial, Mr. Durham pled guilty to two counts of murder and three counts of attempted murder. (*See* Manual Filing, Transcript Volume IV, at 45-65.) His behavior in the courtroom bore little resemblance to his behavior in the months after his arrest. He waited for his turn to speak, answered questions posed to him by the court, and did not exhibit any clear indications of delusions or psychosis. His attorneys confirmed on the record that they had been able to meet with Mr. Durham and had thoroughly reviewed the terms of the plea agreement with him. *Id.* at 45-48. Although Mr. Durham had refused his antipsychotic medication the day before, (*see* Manual Filing, Transcript Volume III, at 28-29), this fact alone did not clearly impact his understanding of the proceedings or his ability to consult with counsel.

The Indiana Court of Appeals recounted these facts and circumstances when it analyzed whether Mr. Durham should have been allowed to withdraw his guilty plea, or whether he should have received another competency evaluation before pleading guilty. (*See* Dkt. 7-8 at 13.) Given the court's thorough inquiry into Mr. Durham's history of mental illness, the three separate findings of competency by independent psychiatrists, the representations of his counsel regarding his ability

to assist with his own representation, his markedly improved courtroom behavior, and the inherently fact-intensive nature of a competency determination, the Court concludes that the Indiana Court of Appeals' decision was not contrary to or an unreasonable application of existing United States Supreme Court precedent, nor did its decision involve an unreasonable finding of fact. Accordingly, Mr. Durham's request for relief on this ground is **denied**.

### 2. Ineffective Assistance of Trial Counsel

#### i. Legal Standard

A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on a claim that counsel was ineffective, a petitioner must show (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687−88. Where the provisions of § 2254(d) apply, courts apply two layers of deference in assessing counsel's performance: "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

The right to effective assistance of counsel extends to plea bargaining. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To establish prejudice in this context, a defendant must show "that the outcome of the plea process would have been different with competent advice." *Id.* at 163. This requires "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Missouri v. Frye*, 566 U.S. 134, 148 (2012). Courts will not find prejudice unless the defendant alleges "special circumstances that might support the conclusion" that his decision to take the plea was caused by counsel's deficient performance. *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citing *Hill v. Lockhart*, 474 U.S. 52, 60 (1984)).

The Seventh Circuit has held many times "that a mere allegation by the defendant that he would have insisted on going to trial is not sufficient to establish prejudice." *Bethel v. United States*, 458 F.3d 711, 718 (7th Cir. 2006) (collecting cases). However, prejudice may be established, at least in some circumstances, where counsel's sentencing prediction "was mistaken by a considerable margin." *Id.* at 719; *see also Lee*, 137 S. Ct. at 1967-68 (finding prejudice where counsel erroneously told the defendant that his guilty plea would not create a risk of deportation, where avoiding deportation was the defendant's central concern).

### ii.     **Mr. Durham's Arguments**

Mr. Durham claims that he received ineffective assistance of trial counsel. He makes six arguments in support of this claim. None of these arguments is persuasive.

First, he argues that trial counsel did not object that the signed plea agreement included an outdated citation to the Indiana Code. However, the Indiana Court of Appeals determined that the outdated code citation was a scrivener's error that had no impact on Mr. Durham's decision to plead guilty. (*See* Dkt. 7-15 at 10.) The Court finds that this was a reasonable finding of fact and interpretation of United States Supreme Court precedent.

Second, he argues that trial counsel did not object to the trial court's failure to advise him of his *Boykin* rights during the guilty plea hearing. *Cf. Boykin v. Alabama*, 395 U.S. 238, 243 (1969) (noting that, by entering a guilty plea, a defendant waives (1) the privilege against self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers). However, the Indiana Court of Appeals correctly observed that Mr. Durham was advised of his *Boykin* rights at the guilty plea hearing, (*see id.* at 11 (quoting Transcript Volume IV, at 52)), and that there was no basis for an objection.

Third, Mr. Durham argues that trial counsel did not object that there was an insufficient factual basis for his guilty plea.  However, the trial court read the bases for each of Mr. Durham's convictions at the guilty plea hearing, and Mr. Durham admitted that he committed those offenses. (*See* Manual Filing, Transcript Volume IV, at 53-54.)  After Mr. Durham made these admissions, the prosecutor described the evidence that would have presented if the case had gone to trial.  *Id.* at 54-55.  The Indiana Court of Appeals determined a sufficient factual basis was laid for these offenses under Indiana law and that trial counsel was not deficient for failing to object.  (Dkt. 7-15 at 11-13.)  The specific elements of these offenses is a matter of state law, and the Court will not second guess the Indiana Court of Appeals' decision on this issue.

Fourth, Mr. Durham argues that trial counsel was ineffective "for not objecting to and challenging the Court's denial of re-evaluation after the Court held a hearing concerning Petitioner's failure to take medications for a week bringing to the Court's attention the need to find out how long it took for the medication to be effective again."  (Dkt. 1 at 36-37.)  However, his trial counsel did request another competency evaluation at this hearing, which the trial court denied.  (*See* Manual Filing, Transcript Volume III, at 38.)  Therefore, his performance was not deficient in this regard.

Fifth, Mr. Durham argues that trial counsel did not advise him about the possibility of receiving consecutive sentences.  Again, the Indiana Court of Appeals correctly determined that Mr. Durham was advised in writing and on the record that he could be sentenced to a range from 45 to 230 years and that some of his sentences could be run consecutively.  Counsel was therefore not deficient in this regard.

Finally, Mr. Durham argues that trial counsel did not object to the filing of an additional attempted murder charge as part of the guilty plea after the omnibus date had already passed.

12

However, Mr. Durham's trial counsel negotiated a concurrent sentence for this amended charge, in addition to having his habitual offender enhancements dismissed as part of the plea agreement. Mr. Durham has not shown that he would have rejected the plea agreement if his trial counsel had made an objection.

For these reasons, Mr. Durham's claim regarding the ineffective assistance of trial counsel is **DENIED**.

## IV.  CERTIFICATE OF APPEALABILITY

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim and about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because reasonable jurists would all agree that some of

13

Mr. Durham's claims are non-cognizable and procedurally defaulted, and that his remaining claims are without merit, no certificate of appealability shall issue.

## V. CONCLUSION

For the reasons set forth above, Mr. Durham's Petition for a Writ of Habeas Corpus (Dkt. [1]) is **DENIED**. Further, a certificate of appealability shall not issue. Final judgment in accordance with this Order shall now issue.

**SO ORDERED**.

Date: 11/4/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

James E. Durham, #921546
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
Pendleton, Indiana 46064

Tyler G. Banks
INDIANA ATTORNEY GENERAL'S OFFICE
tyler.banks@atg.in.gov